UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CHRISTOPHER KOPCZYNSKI, | : |
| Plaintiff, | : Case No._____ |
| v. | : **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| TETRAPHASE PHARMACEUTICALS, INC., L. PATRICK GAGE, GAREN BOHLIN, STEVEN BOYD, JEFFREY A. CHODAKEWITZ, JOHN G. FREUND, GERRI HENWOOD, GUY MACDONALD, KEITH MAHER, and NANCY J. WYSENSKI, | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

---

Plaintiff Christopher Kopczynski ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1.  Plaintiff brings this action against Tetraphase Pharmaceuticals, Inc. ("Tetraphase" or the "Company") and the members of Tetraphase's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to AcelRx Pharmaceuticals, Inc. ("AcelRx") through AcelRx's indirect wholly-owned subsidiary Consolidation Merger Sub, Inc. (the "Proposed Transaction").

2.      On March 16, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which each Tetraphase stockholder will receive 0.6303 of a share of AcelRx common stock, valued at approximately $14.4 million as of the close of trading on March 13, 2020, and one contingent value right ("CVR"), which would entitle the holders to receive aggregate payments of up to $12.5 million for the achievement of future XERAVA net sales milestones starting in 2021.

3.      On April 24, 2020, defendants filed a Definitive Proxy Statement (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) financial projections for Tetraphase, AcelRx and the combined pro forma company; (ii) the financial analyses performed by the Board's financial advisor, Janney Montgomery Scott LLC ("Janney"); (iii) the background of the Proposed Transaction; (iv) Tetraphase's financial advisors' potential conflicts of interest; and (v) Company insiders' potential conflicts of interest. Accordingly, without additional information the Proxy is materially misleading in violation of federal securities laws.

4.      The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, Tetraphase common stock trades on The Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Tetraphase.

9. Defendant Tetraphase is a Delaware corporation, with its principal executive offices located at 480 Arsenal Way, Watertown, Massachusetts 02472. Tetraphase's shares trade on The Nasdaq Global Select Market under the ticker symbol "TTPH."

10. Defendant L. Patrick Gage has served as Chairman of the Board and a director of the Company since December 2011.

11. Defendant Garen Bohlin has served as a director of the Company since July 2010.

12. Defendant Steven Boyd has served as a director of the Company since January 2020.

13. Defendant Jeffrey A. Chodakewitz has served as a director of the Company since June 2014.

14. Defendant John G. Freund has served as a director of the Company since October 2012.

15. Defendant Gerri Henwood has served as a director of the Company since April 2015.

16. Defendant Guy Macdonald has served as a director of the Company since January 2008 and previously served as the Company's President and Chief Executive Officer from January 2008 until August 2019.

17. Defendant Keith Maher has served as a director of the Company since January 2020.

18. Defendant Nancy J. Wysenski has served as a director of the Company since March 2014.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

20. Relevant non-party AcelRx is a Delaware corporation, with its principal executive offices located at 351 Galveston Drive, Redwood City, California 94063. AcelRx's shares trade on The Nasdaq Global Select Market under the ticker symbol "ACRX."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

21. Founded in 2006, Tetraphase is a biopharmaceutical company that develops various antibiotics for the treatment of serious and life-threatening multidrug-resistant infections. Tetraphase's lead product XERAVA is approved for the treatment of complicated intra-abdominal

infections by the U.S. Food and Drug Administration and the European Medicines Agency. The Company is also developing antibiotics TP-271, a fully synthetic tetracycline antibiotic that targets respiratory disease caused by bacterial biothreats and antibiotic-resistant public health pathogens and TP-6076, a synthetic fluorocycline derivative with potent activity in vitro against multidrug-resistant Gram-negative pathogens, both of which are Phase 2 ready, and TP-2846, which is in preclinical testing for acute myeloid leukemia.

22.     On March 12, 2020, the Company reported its fourth quarter ("Q4") and full year 2019 financial results. Tetraphase reported Q4 2019 net loss of $11.4 million, or $2.75 per share, compared to a net loss of $21.5 million, or $8.00 per share, for Q4 2018, driven by both increased product revenues and lower operating expenses. For the year ended December 31, 2019, Tetraphase reported a net loss of $70.1 million, or $22.85 per share, compared to a net loss of $72.2 million, or $27.48 per share, for the same period in 2018. The Company generated strong Q4 sales growth for XERAVA, with carton sales growing over 45% compared with the third quarter of 2019. The Company's Chief Executive Officer Larry Edwards commented on the results, stating:

> We made significant progress throughout 2019, ending the year with $3.6 million in XERAVA net sales for the full year and a quarter-to-quarter net revenue increase in the fourth quarter of 2019 of 49.3%. Our sales consist solely of actual use and not stocking retail or other channels. We believe XERAVA is a critically important new addition to the hospital antibiotic armamentarium, and we remain committed to increasing formulary uptake and reaching all of our targeted accounts. The reorganization efforts we undertook in 2019 to create a streamlined organization singularly focused on the commercialization of XERAVA, including the elimination of our research and development function, are central to the success of our mission. With two recently completed equity offerings in November 2019 and January 2020 adding to our balance sheet, we are now in a stronger financial position to execute on our goals.

23.     On March 16, 2020, Tetraphase announced the Proposed Transaction, stating, in pertinent part:

WATERTOWN, Mass.-- Tetraphase Pharmaceuticals, Inc. (Nasdaq: TTPH), a biopharmaceutical company focused on commercializing its novel tetracycline XERAVA to treat serious and life-threatening infections, today announced the execution of a definitive merger agreement pursuant to which AcelRx Pharmaceuticals (Nasdaq: ACRX) would acquire Tetraphase in a stock for stock transaction. Under the terms of the agreement, Tetraphase stockholders will receive, for each share of Tetraphase common stock, 0.6303 of a share of AcelRx common stock, valued at approximately $14.4 million as of the close of trading on March 13, 2020, and one contingent value right (CVR), which would entitle the holders to receive aggregate payments of up to $12.5 million for the achievement of future XERAVA™ net sales milestones starting in 2021. The transaction was unanimously approved by both the AcelRx and Tetraphase boards of directors and is expected to close in the second quarter of 2020. Select Tetraphase stockholders and warrant holders, including Armistice Capital, LLC, holding in the aggregate approximately 31% of Tetraphase's outstanding common stock, have signed voting agreements in favor of the transaction.

Concurrently with signing the merger agreement, Tetraphase and AcelRx entered into a co-promotion agreement to market and promote XERAVA™ for the treatment of complicated intra-abdominal infections (cIAI) and DSUVIA® for the treatment of acute pain in medically supervised settings. The co-promotion agreement will allow the AcelRx and Tetraphase teams to benefit immediately from the promotion of multiple products, leverage each company's customer relationships, and create efficiencies among commercial teams. The combined sales team will cover in excess of 70% of each company's originally targeted hospitals.

"This transaction is an important move forward for Tetraphase and more importantly, for XERAVA and the patients who need this treatment," said Larry Edwards, President and Chief Executive Officer of Tetraphase. "We are excited to collaborate with AcelRx, a partner whose strategic goals complement our own. We continue to believe that XERAVA is a key addition to the hospital anti-infective armamentarium, and believe that together with AcelRx we will be able to more effectively bring new treatments to patients in healthcare institutions."

"We are excited to have reached agreement with Tetraphase, a company with a well-established U.S. salesforce and a high-growth hospital product that complements AcelRx's commercial strategy," said Vince Angotti, Chief Executive Officer of AcelRx. "This transaction highlights our focus on efficiently commercializing DSUVIA with a salesforce promoting multiple products and is the first step in our plan to create a growth platform to further consolidate hospital-focused pharmaceutical companies and products. We look forward to integrating XERAVA and the existing Tetraphase commercial infrastructure with our own as we strengthen our position on promoting innovative products to healthcare institutions allowing patients access to new and improved treatments."

Based on the closing price of AcelRx stock on March 13, 2020, the stock consideration to be received by Tetraphase equityholders is valued at approximately $14.4 million, with approximately $7.4 million of this amount allocated to the Company's outstanding common stock warrants. In the merger, Tetraphase stockholders would also be entitled to receive, for each share of Tetraphase common stock, one non-tradeable CVR, the holders of which will be entitled to receive payments of up to an additional $12.5 million in the aggregate upon the achievement of net sales of XERAVA™ in the United States of at least (i) $20 million during 2021, (ii) $35 million during any year ending on or before December 31, 2024 and (iii) $55 million during any year ending on or before December 31, 2024. The total cost synergy expectation from the combined company exceeds 90% of the Tetraphase operating expenses and are expected to be fully realized in 2021.

Closing of the transaction is subject to specified closing conditions, including Tetraphase having a minimum amount of net cash as of the closing and approval by Tetraphase stockholders. Upon the closing of the transaction, Tetraphase will become a privately held company and shares of Tetraphase's common stock will no longer be listed on any public market. Subject to certain limited exceptions, the CVRs will be non-transferable.

**The Proxy Materially Misleads Tetraphase Stockholders by Omitting Material Information**

24.     On April 24, 2020, defendants filed the materially misleading and incomplete Proxy with the SEC. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) financial projections for Tetraphase, AcelRx and the combined pro forma company; (ii) the financial analyses performed by the Board's financial advisor, Janney; (iii) the background of the Proposed Transaction; (iv) Tetraphase's financial advisors' potential conflicts of interest; and (v) Company insiders' potential conflicts of interest.

*Material Omissions Concerning the Financial Projections*

25.     The Proxy omits material information regarding Company and AcelRx management's financial projections for Tetraphase, AcelRx and the combined pro forma company.

26.     For example, with respect to each of the Tetraphase Base Projections, Tetraphase Upside Projections, AcelRx Base Projections and Combined Pro Forma Projections, the Proxy

fails to disclose all line items underlying unlevered free cash flow ("UFCF"), including: (i) depreciation; (ii) other non-cash adjustments; (iii) capital expenditures; and (iv) change in working capital. The Proxy also fails to disclose the potential impact of net operating losses, which was excluded from the respective UFCF calculations, as well as stock-based compensation expense which was not treated as a cash expense.

27. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.

28. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Certain Information Provided by the Parties."

***Material Omissions Concerning Janney's Financial Analyses***

29. The Proxy describes Janney's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Janney's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Tetraphase's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Janney's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

30. With respect to Janney's *Selected Precedent Transactions Analysis* and *Selected Public Companies Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each of the transactions and companies analyzed by Janney.

31. With respect to Janney's *Standalone Discounted Cash Flow Analysis* of Tetraphase, the Proxy fails to disclose: (i) the financial metric that exit multiples of 2.25x to 2.75x were applied to in order to derive the terminal values and quantification of the metric; (ii) the

terminal values of Tetraphase; (iii) the inputs and assumptions underlying the discount rates ranging from 17.6% to 21.6%; and (iv) the net debt or net cash utilized in the analysis.

32. With respect to Janney's *Analysis of Implied Pro Forma Equity Value Impact to Tetraphase*, the Proxy fails to disclose: (i) the financial metric that exit multiples of 2.25x to 2.75x were applied to in order to derive the terminal values and quantification of the metric; (ii) quantification of the terminal values of the combined pro forma company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 14.7% to 18.7%; and (iv) the net debt or net cash of the combined pro forma entity utilized in the analysis.

33. With respect to Janney's *Premiums Paid Analysis*, the Proxy fails to disclose: (i) the transactions observed by Janney; and (ii) the premiums paid in each of those transactions.

34. Without such undisclosed information, Tetraphase stockholders cannot evaluate for themselves whether the financial analyses performed by Janney were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Janney's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

35. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Opinion of Janney Montgomery Scott LLC, Tetraphase's Financial Advisor."

***Material Omissions Concerning the Background of the Proposed Transaction***

36. The Proxy fails to disclose material information concerning the background process leading to the Proposed Transaction.

37. According to the Proxy, the Company entered into confidentiality agreements with numerous parties in connection with the sale process leading up to the Proposed Transaction. Yet, the Proxy fails to disclose whether the confidentiality agreements include a "don't-ask, don't-waive" standstill provision that is presently precluding potential acquirers from submitting a topping bid for the Company.

38. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Background of the Merger."

***Material Omissions Concerning Tetraphase's Financial Advisors' Potential Conflicts of Interest***

39. The Proxy fails to disclose material information concerning the conflicts of interest faced by Janney.

40. According to the Proxy:

> Pursuant to the terms of the engagement letters between Janney and the Tetraphase Board and between Janney and the management of Tetraphase, Tetraphase agreed to pay to Janney a retainer fee upon signing of the fairness opinion engagement letter, a fee upon Janney's delivery of its Opinion, and a fee upon the consummation of the Merger in consideration of financial advisory services rendered in connection with the Merger, for an aggregate amount of fees of approximately $600,000. Approximately half of the amount of the total fees are contingent upon the successful completion of the Merger. The fee for rendering the Opinion is not contingent on the successful completion of the Merger or the conclusions expressed therein.

Proxy at 75-76. Yet, the Proxy fails to disclose and quantify the portion of Janney's fee payable upon each of: (i) signing of the fairness opinion engagement letter; (ii) delivery of Janney's fairness opinion; and (iii) consummation of the Proposed Transaction. The Proxy further fails to quantify the amount of Janney's fee that is contingent upon consummation of the Proposed Transaction. The Proxy also fails to disclose the details of any services provided to the Company's largest stockholder, Armistice Capital, LLC, in the two years prior to the date of its fairness opinion, and any fees received for services provided.

41. Moreover, the Proxy fails to disclose the details of the Company's engagement of the other financial advisors retained in connection with the sales process, referred to in the Proxy as "Financial Advisor A," "Financial Advisor B," and "Financial Advisor C," including (i) the identities thereof; (iii) the details of the fees paid; and (iii) the details of any services provided by the respective financial advisors to the Company, AcelRx or Armistice in the prior two years, and any fees received for services provided.

42. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

43. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Opinion of Janney Montgomery Scott LLC, Tetraphase's Financial Advisor" and "Background of the Merger."

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

44. The Proxy also fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

45. For example, according to the Proxy, "AcelRx and Tetraphase have commenced an integration planning process to determine the employment status of Tetraphase's executive officers following the Effective Time. Additional decisions regarding these individuals are expected to be made closer to, or after, the closing of the Merger." *Id.* at 84. Yet, the Proxy fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between AcelRx and Tetraphase executive officers and directors, including who participated in all such communications, when they occurred and their content. The Proxy also fails to disclose whether any of AcelRx's proposals or indications of interest mentioned management retention.

46. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Tetraphase's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

47. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Background of the Merger" and "Equity Awards Held by Tetraphase Directors and Executive Officers."

48. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

49. Plaintiff repeats all previous allegations as if set forth in full.

50. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

51. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial projections, the financial analyses performed by

the Board's financial advisor, the background of the Proposed Transaction, and potential conflicts of interest. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

52. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek to exercise their appraisal rights.

53. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

54. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

55. Plaintiff repeats all previous allegations as if set forth in full.

56. The Individual Defendants acted as controlling persons of Tetraphase within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tetraphase, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

59. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Tetraphase stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Tetraphase, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  May 1, 2020

WEISSLAW LLP

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*